CRINE *v.* THE EAST TENNESSEE, VIRGINIA AND GEORGIA RAILWAY COMPANY.

A man who voluntarily takes passage upon an ordinary freight-train of a railway on which passenger-trains are provided, is entitled to expect such security only as that mode of conveyance is reasonably expected to render; and if, while seated in the cab, he is injured by a jolt or jar in coupling cars to the train, the company is not liable to him in damages, the burden being on it to show that such jolt or jar is usual and necessary.

March 12, 1890.

Railroads.  Negligence.  Passengers.  Charge of court.  Before Judge ATKINSON.  Appling superior court.  March term, 1889.

Crine sued the railway company for damages, for personal injuries sustained by him while a passenger on one of its trains.  His evidence tended to show that the train on which he was hurt was a freight-train of defendant, which he boarded, on January 4th, 1887, at Baxley about half past four o'clock in the afternoon to go to Lumber City, to which city he paid his fare. After dark, about five o'clock, at Prentiss, a station between Baxley and Lumber City, there were various movements of the train backward and forward, by one of which plaintiff was knocked from the seat in the cab which he was occupying, and thrown four or five feet

against the brake-wheel in the cab, and seriously hurt. The cab was not then lighted, the conductor having carried away the lantern, and no train-hand was present. Other passengers were in the cab. The train came back with a very heavy force, and it was by reason of this that plaintiff was thrown on the brake-wheel. He believed that if the train had been handled right and a brakesman had been there to put on the brake, the accident would have been avoided. The brakesman had been left behind at Jesup. Plaintiff was knocked senseless, and when he came to his senses, was on the seat, and two gentlemen were trying to assist him. He testified: "I guess the jerk was from stopping too suddenly. They started off; then came this sudden jerk or stop; that is all I know. It just stopped. I was hurt when they stopped. It was a jerk from the car or engine, and the whole train moved, and then stopped right at once, and threw me as well as the balance of the passengers out of their seats." Other men in the car were thrown down, and plaintiff heard scrambling and screaming, and one or more passengers talking about how rough it was and how the road was carried on. He had frequently ridden on freight-trains on this road; took this train because he did not want to get up at two o'clock in the morning to take the regular passenger-train. He knew there would be a passenger-train that night, but did not know when it would arrive, as it never came on time. He was the only one hurt that he knew of. He told the conductor he was hurt, and the conductor did all he could for him. A person who was standing on steps leading from the bottom to the top part of the cab, testified that a person with whom he was talking was knocked down the steps and he himself would have fallen if he had not held the banister, and that he heard some scrambling and groaning like some one was hurt, and some one

said it was a drummer or an Irish peddler. Plaintiff was a drummer. The train came back with considerable force, and this witness thought the train was taking on cars and coupling them. There was testimony as to the extent of plaintiff's injuries, etc.

The testimony for the defendant tended to show that the jerking and jolting of this train were not unusual, but such as was customary in handling freight-trains, and that a freight-train, because of the manner in which it was made up, could not be handled with the smoothness and ease of a passenger-train. The conductor denied that his attention was called, at the time, to plaintiff being injured, but testified that he did not hear of any one being injured until long after, and was surprised when he heard that it was claimed that any one was hurt. The brakesman got off the train at Wheaton, with the permission of the conductor, which left one man short. If he had been on the car and put on the brake, the shock would have been lessened. If it was coming back against the cab with the brake on, it would be greater, as there would be more resistance. There was testimony tending to show that, from the position plaintiff was in at the time of the alleged injury, he could not have been hurt as he testified; and that probably his suffering was caused by colic. One of the passengers testified that he did not remember about anybody being hurt. Another testified that there was a slight shock and in a short time his attention was called to a man sitting on the opposite side, and one Graham said that man must be sick, and they went over and found that it was plaintiff, who said he was hurt. Witness offered him something to drink, but he refused. The shock did not bring witness out of his seat, and he did not see anybody thrown. He saw plaintiff when he got back into his seat. There was nothing broken about the train by the shock or jolt. The conductor

and engineer had never before heard of a similar accident.

The jury found for the defendant. The plaintiff moved for a new trial on the general grounds; and because of errors in the charge of the court, viz:

. (*a*) "The character of the property is to be considered in determining whether or not this defendant, its servants and agents, used extraordinary care upon this particular occasion upon which these injuries are shown to have been committed by plaintiff, provided it has been shown to have been committed at all. What might amount to extraordinary care with respect to one class of trains might not amount to extraordinary care with respect to another class of trains; but the degree of care must be the same, the particular kind of property being considered, and the same standard being applied to it."

(*b*) "Now as to whether they used extraordinary diligence, you are to look to the testimony; and the court charges you that if it should appear from the evidence that these injuries resulted from the handling of the train, freight-train, and the plaintiff took passage upon a freight-train set aside for the purpose of transportation of freight from one point to another, and not set aside, adapted to or designed for the transportation of passengers, the court charges you that if this plaintiff voluntarily entered this train rather than wait for a passenger-train—that he consulted his own convenience and took passage upon a freight-train, then the court charges you that he took upon himself those risks necessarily incident to the management of that peculiar class of trains; by this you will not understand that the defendant was relieved from the handling of the freight-train with extraordinary care and diligence, but you will enquire whether or not the train in question was handled with that extreme care and caution that a very pru-

dent and thoughtful man would have employed in hand-
ling property of like kind. You are to look and see
whether or not there is as much security to passengers
upon freight-trains as upon passenger-trains, whether,
even if defendant was in the exercise of extreme care
and caution in handling this particular train, whether
or not there is not necessarily more danger in the one
than the other. If this defendant exercised extraordi-
nary diligence in handling this freight-train, and in-
juries resulted to this plaintiff, then he would not be
entitled to recover, although had the exercise of simi-
lar diligence been applied to a passenger-train he might
not have been injured. The court is requested to charge
the jury that a man who voluntarily takes passage
upon a train that is not a passenger-train but only an
ordinary freight-train, is entitled to look for only
such security as that mode of conveyance is reasonably
expected to render. In that case, if he receives some
injury while he was seated in the cab, and the injury
was caused by a jolt or jar as is usual and necessary in
coupling the cars of a freight-train, he cannot recover.
The court charges you that this is a correct principle of
law."

(c) "The court charges you, in addition to this, that
where a passenger-train is provided for the transporta-
tion of passengers over a railroad, and one voluntarily
takes passage upon a freight-train rather than wait for
a passenger, a railroad company would not be liable to
him for injuries for a jolt or jar in the coupling of
their cars, if it was such as was usual and necessary ; the
burden being upon the railroad as I have before stated."

(d) "In addition to this, you are authorized to in-
quire whether or not it was an injury that might be
reasonably expected to occur under the circumstances.
If you find such an injury was reasonable, then it was
the duty of the company to carefully guard against the

jolt in coupling the cars that would produce such an injury; but if on the contrary it was an injury of a character never before known to occur, and therefore an injury that might not reasonably be expected under such circumstances, and in coupling and uncoupling the machinery was handled as machinery of like character would be handled by a prudent and thoughtful person in the exercise of extreme care and caution, and the jolt was no greater than the jolt usual under such circumstances, then even if the plaintiff was injured thereby, in that case you would be authorized to find for defendant."

(e) "If a railroad supplies passenger-trains running to and from certain points, and for his own convenience one takes passage on a freight-train, and he is injured by jolts or jars usual and necessary in coupling and uncoupling in the prudent and ordinary handling of freight-trains, he cannot recover."

The motion was overruled, and plaintiff excepted.

C. C. SMITH, for plaintiff, cited Code, §4585; 81 *Ga.* 397; 65 *Ga.* 120; 78 *Ga.* 694; 73 *Ga.* 557; 74 *Ga.* 857; 75 *Ga.* 810; 80 *Ga.* 526; 79 *Ga.* 234; 56 Ala. 246 (28 Am. Rep. 771); 14 N. E. Rep. 198; 58 Me. 187 (4 Am. Rep. 267); 1 Duer, 578; 30 Ill. 9; 33 Wis. 41 (14 Am. Rep. 735); 81 Mo. 325 (51 Am. Rep. 239); 3 S. E. Rep. 95, 397.

BACON & RUTHERFORD, by brief, cited 80 *Ga.* 749; 73 *Ga.* 149.

BLANDFORD, Justice.

A verdict having been rendered in this case in favor of the defendant in error, the plaintiff in error moved for a new trial upon several grounds, alleging as error certain charges of the court, which are set forth in the official report of this case, the substance of the same being that the court erred in instructing the jury as fol-

lows :   A man who voluntarily takes passage upon a
train which is not a passenger-train, but only an ordi-
nary freight-train, is only entitled to look for such secu-
rity as that mode of conveyance is reasonably expected
to render.   In that case, if he receives an injury while
he is seated inside of the cab, and such injury is caused
by a jolt or a jar such as is usual and necessary in
coupling the cars of a freight-train, he cannot recover.
When a passenger-train is provided for the transporta-
tion of passengers on a railway, and one voluntarily
takes passage on a freight-train rather than wait for the
passenger-train, a railway company would not be liable
to him for injuries received from a jolt or jar in the
coupling of their cars, if it was such as was usual and
necessary, the burden being upon the railroad to estab-
lish the necessity of the same.   If, notwithstanding the
exercise of extraordinary diligence on the part of the
railway company, such injury resulted, the plaintiff
would not be entitled to recover.   But unless such dili-
gence was established on their part, if the plaintiff re-
ceived injuries in consequence of the negligent acts of
the defendant described in the declaration, he would be
entitled to recover.   And further, that the jury were
authorized to inquire whether it was such an injury as
might reasonably be expected to occur under the cir-
cumstances ; and if they found that such injury was
reasonably to be expected, then it was the duty of the
company to carefully guard against a jolt in coupling
the cars which would produce such an injury.   But if,
on the contrary, it was an injury of a character never be-
fore known to occur, and therefore not an injury which
might reasonably have been expected under the circum-
stances ; and if in coupling and uncoupling, the ma-
chinery was handled as machinery of like character
would be handled by a prudent and thoughtful person
in the exercise of extreme care and caution, and the jolt

was no greater than the jolt usual under such circumstances, then, even if the plaintiff was injured thereby, the jury would be authorized to find for the defendant.

We think, under the facts in this case, that this was a fair charge and presented the law correctly. The plaintiff in error took passage upon a freight-train rather than wait a few hours for the regular passenger-train. He was entitled to no accommodations other than those which are usually provided on a freight-train; and it must be presumed that he intended to risk any jolts and jars that might occur on such a train which were not caused by the negligence of the agents of the railroad company, but were usual and consequent upon such mode of traveling. The argument submitted by the able counsel for the defendant in error is, to our mind. unanswerable; and we are satisfied that the injury, if any injury was sustained by the plaintiff in error, was without fault or negligence on the part of the defendant company or its agents. *Judgment affirmed.*